**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                             Case No.: 21-15459-LMI

**SOS FURNITURE COMPANY, INC.**                    Chapter 7

                    Debtor.
_____/

**NOTICE OF FILING**
**SUPPLEMENT TO INITIAL SCHEDULES**

PLEASE TAKE NOTICE that undersigned counsel for Drew M. Dillworth, pre-petition state court receiver for the Debtor, SOS Furniture Company, Inc., files herewith a Supplement to Initial Schedules.  The Supplement to Initial Schedules [ECF No. 10] includes the following documents prepared by the Receiver and filed by the Receiver in the state court receivership prior to the petition date:

1) Receiver's First Status Report And Inventory

2) Report of Inventory Sale

3) Receiver's Montly Report

**CERTIFICATE OF SERVICE**

I CERTIFY that this document is being filed electronically *via* the Court's CM/ECF website on June 17, 2021.  I further certify that the document is being furnished by transmission of Notices of Electronic Filing ("NEF") generated by CM/ECF to those parties registered to receive NEF in this case, on the date the document is entered on the court docket.

Dated: June 17, 2021

                                                    Respectfully submitted,

    /s/ Eric J. Silver
ERIC J. SILVER, ESQ.
Florida Bar No. 057262
esilver@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
150 West Flagler Street
Museum Tower, Suite 2200
Miami, Florida 33130
Telephone:     (305) 789-3200
*Counsel to Receiver, Drew M. Dillworth*

2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2020-022321-CA-01

Tempur-Pedic North America LLC et al.,

     Plaintiffs,

v.

SOS Furniture Co., Inc. et al.,

     Defendants.

_____/

## RECEIVER'S FIRST STATUS REPORT AND INVENTORY

Drew M. Dillworth, court appointed receiver ("Receiver") for the above captioned corporate judgment debtors, by and through undersigned counsel, pursuant to this Court's *Post Judgment Order Appointing Receiver* [D.E. 29] ("Receivership Order"), submit this initial report and inventory, including the following preliminary findings and conclusions:

### *General Background*

1.     SOS Furniture Company, Inc. ("SOS") is a Florida corporation formed on or about March 4, 2002.

2.     Mattress One, Inc. ("MOI" and together with SOS, the "Receivership Entities"), is a Florida corporation formed on or about January 4, 2005.

3.     Prior to Mr. Dillworth's appointment as Receiver, the Receivership Entities were engaged in the retail mattress business and operated several retail locations throughout the State of Florida.[1]

4.     On or about May 4, 2020, a Final Judgment was entered against the Receivership

---

[1] The Receivership Entities also operated in the States of Texas and Florida under an affiliate, Mattress Pal, Inc., which filed for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida. That case converted to one under chapter 7 and Mattress Pal no longer operates.

Entities and in favor of Tempur-Pedic North America, LLC, Sealy Mattress Manufacturing, Co., LLC, and Comfort Revolution, LLC (collectively, the "Judgment Creditors") in the United States District Court, Eastern District of Kentucky, in the aggregate principal amount of $15,537,590.23 (the "Final Judgment").

5.      Thereafter, the Judgment Creditors domesticated the Final Judgment in Florida and initiated proceedings supplementary in this Court.

*Appointment and Control*

6.      At the request of the Judgment Creditors, and pursuant to sections 56.29 and/or 56.10 of the Florida Statutes, the Court entered its Receivership Order on February 22, 2021, which was served on Receiver of even date.

7.      Since the date of the Receivership Order, Receiver has taken the following actions, either personally, or through representatives:

a.  Immediately conducted a review of the Receivership Order and the docket;

b.  Contacted counsel for Judgment Creditors and counsel for the Receivership Entities;

c.  Demanded turnover of control and books and records from the Receivership Entities (more on this below);

d.  Secured and is in the process of reviewing all electronically stored information of the Receivership Entities, in cloud based servers, through DropBox, Microsoft 360, and QuickBooks;

e.  Demanded and gained access to the electronic banking records of the Receivership Entities maintained at Wells Fargo Bank, N.A.;

f.   Reviewed all information regarding the Receivership Entities available from the Public Records, as well as documents provided by third parties;

g.   Searched the Public Records for all assets, recorded liens, and security interests;

h.   Obtained and reviewed a list of the pending actions against the Receivership Entities, including the pending eviction actions in venues throughout the State of Florida;

i.   Obtained and reviewed an inventory provided by the Receivership Entities' former principals;

j.   Solicited advice from liquidation consultants on the maximization of the value of the existing inventory;

k.   Toured SOS's distribution center located in Orlando, Florida and several retail locations; and

l.   Participated in several video conferences and telephone and email communications with the Judgment Creditors and their counsel, the designated representatives and attorneys for the Receivership Entities, and other parties in interest in an effort to get up to speed and ascertain the financial condition of the receivership entities.

8.   **For the avoidance of doubt, and to make it abundantly clear to the Court and all interested parties, the Receiver is not operating, nor did he ever operate, these Receivership Entities.** Any ability to assess and, if appropriate, restructure the business operations for the benefit of creditors was frustrated by the actions of the Control Parties (defined below) as described below.

***Turnover and Contempt Proceedings***

9.      As set forth above, the Receiver immediately made demand upon the Receivership Entities' control parties, Maged Salem, Madhat Salem, Majdi Salem, Mohanad Salem, and Marwan Salem (collectively, the "Control Parties"),  and professionals for the books and records of the Receivership Entities.

10.     Unfortunately, compliance was not immediately forthcoming and the Receiver was forced seek assistance from the Court on two separate occasions for the Control Parties' failure to turnover basic financial information in order for the Receiver to make any informed decision regarding the operations of the Receivership Entities. See D.E. 31, 35, 38 and 56.

11.     As a result of his turnover demands and the contempt proceedings, the Receiver obtained the following information from the parties in control of the Receivership Entities:

    a.   Financial information for the years 2017-2019 from the Receivership Entities' accountants, Vinod Arora CPA, PA;

    b.   Document production from the Receivership Entities' counsel representing the Receivership Entities in various litigation matters, Navarro Attorneys at Law ("Navarro"), which had previously been compiled and produced in connection with pending litigation involving the Receivership Entities and one of the control parties;

    c.   An inventory of mattresses from the Control Parties – see D.E. 46 at Ex. E;

    d.   A list of pending litigation claims involving the Receivership Entities from Navarro – Id. at Ex. D;

    e.   Various bank statements from the Control Parties; and

    f.   Electronic credentials for various email accounts, DropBox, QuickBooks, and

4

other online business accounts from the Control Parties.

12.    The Court reserved ruling on finding the Control Parties in contempt of this Court pending an evidentiary hearing.

### *Turnover of Funds to the Receiver*

13.    The Receiver also became aware through his turnover demand and the resulting contempt proceedings that the control parties had divested the receivership estate of (a) $358,561.51 in settlement funds (the "Chase Settlement Funds") that were deposited directly into one of the control parties' bank accounts and (b) $1,672,200.00 in funds (the "Fifth Third Funds") transferred out of SOS's bank account days before the Receivership Order into one of the control parties' bank accounts at the same bank.

14.    Chase Settlement Funds. The Court ordered the control parties to turnover the funds to the Receiver and provide the Receiver with an accounting. See D.E. 56. The Control Parties turned over **$173,188.43** to the Receiver and claim that the Control Parties used the remainder of the Chase Settlement Funds to pay for expenses of the Receivership Entities. See D.E. 62. The Receiver disputes the accounting provided by the control parties and requested further documentation concerning the disposition of the Chase Settlement Funds from the control parties. If unresolved, this issue will need to be adjudicated by the Court.

15.    Fifth Third Funds. Regretfully, the Receiver was not made aware of the Fifth Third Funds until after the Court authorized the Receiver to liquidate the Receivership Entities' inventory on an expedited basis. See D.E. 52. Ultimately, the Court ordered turnover of the funds to the Receiver [D.E. 56] and the Receiver is in receipt of the Fifth Third Funds totaling **$1,672,200.00**.  Various stakeholders have asserted claims and positions with respect to the Fifth Third Funds. Pursuant to this Court's Order, the Fifth Third Funds are to remain in the

Receiver's possession pending further order of the Court. Id.

*Liquidation of Inventory and Abandonment of Leases*

16.     Without any assistance from the Control Parties and without any funds to operate the Receivership Entities, the Receiver contacted liquidating consultants, Hilco Wholesale Solutions, LLC ("Hilco"), with extensive experience in liquidating mattress inventory for professional assistance. The Receiver solicited a proposal from Hilco to liquidate the Receivership Entities' inventory through either an orderly going out of business sale or a forced liquidation.

17.     After visiting the distribution center (the "Facility") and several retail location Hilco produced a report to the Receiver that was less than complimentary of previous management. See D.E. 46 at Ex. F. Specifically, Hilco advised of several factors that would limit the saleability of the existing inventory:

    a.   The warehouse was very disorganized;

    b.   Hilco was unable to audit any SKUs on the provided inventory;

    c.   The Receivership Entities were not used any method to track inventory or its location within the Facility;

    d.   New product is mixed with customer returns and inventory from closed stores;

    e.   Inventory from closed stores was placed by personnel in the first available space within the Facility;

    f.   Many aisles in the Facility are completely impassible without significant effort to move inventory;

    g.   There is likely no way of accurately accounting for what inventory is at the Facility;

h.   It would be difficult (if not impossible) to delineate between new inventory, displays, and customer returns;

i.   The inventory is not segregated within the Facility in any methodical way; and

j.   Hilco observed poor standards, poor fiscal responsibility, and poor operations.

18.    Hilco ultimately advised the Receiver that without funds or personnel, and with evictions pending throughout the state, an orderly liquidation of the inventory was not feasible. Accordingly, in Hilco's business judgment, the only viable option for maximizing the value of the inventory was to conduct a bulk sale of the inventory located at the Facility and to abandon the remaining unsold inventory and real property leasehold interests.

19.    The Receiver retained Hilco, negotiated the terms of a bulk sale bid for the saleable inventory located at the distribution center, negotiated the terms of the estate's continued use and occupation of the Facility with the landlord, and sought and obtained Court approval of the disposition of the inventory on an emergent basis. See D.E. 40 and 53. Of course, had the Control Parties complied with the Receivership Order and alerted the Receiver to the Fifth Third Funds, the entire process might have been different.

20.    Hilco advised the Receiver that, given the Control Parties' failure to pay rent at any of the Receivership Entities' retail locations, not only were none of the locations available for an orderly liquidation, but they were also not viable candidates for assignment. Hilco also advised that the existing inventory at the retail locations had *de minimus* value or was otherwise a burden to the estate to collect and liquidate in the bulk sale. Accordingly, with the approval of the Court, the Receiver abandoned the retail locations and all unsold inventory effective February 22, 2021. See D.E. 53.

21.     As a result of the liquidation of the inventory, the estate received $80,534.97 in net proceeds after the payment of authorized and approved commissions and expenses. Pursuant to the agreement with the landlord for the Facility approved by the Court [D.E. 53], the Receiver paid fifteen percent (15%) of the net recovery to the landlord ($12,080.25), leaving the estate with **$68,454.72** in net recoveries from the liquidation of the inventory.

### *Litigation Claims*

22.     The Receiver is actively investigating the financial affairs of the Receivership Entities. Regrettably, the Control Parties did not keep accurate or reliable books and records for the Receivership Entities. For example, the QuickBooks files for the Receivership Entities does not have sufficient date post-2019 to be able to meaningfully examine the financial condition of the Receivership Entities. As a result, the Receiver was forced to issue subpoenas to several financial institutions to obtain missing bank records. See D.E. 57. The Control Parties have sought a protective order regarding the information sought in the subpoenas. See D.E. 64.

23.     Notwithstanding the lack of cooperation from the Control Parties, the Receiver and his professionals have identified several questionable transactions that require further investigation and may result in potential avoidance actions.

24.     Further, the Receiver retained special counsel, Cimo Mazer Mark PLLC and Roniel Rodriguez IV PA, to investigate and pursue claims and causes of action against any insiders of the Receivership Entities, any pre-petition professionals of the Receivership Entities, and financial institutions. See D.E. 58.

### *Other Assets*

25.     Garnishment Funds. Navarro is holding $100,119.85 in funds that are subject to competing writs of garnishment served by the Judgment Creditors and two other judgment

creditors. *See Tempur-Pedic North America, LLC et al. v. SOS Furniture Company, Inc., et al.*, Case No. 1:20-mc-22441-KMM (S.D. Fla.) and *Sunshop Properties v. Mattress One, Inc*., Case No. 2018-31741-CA-01 (11th Jud. Cir. Miami-Dade Cnty., Fla.).

26.    <u>Alleged Insurance Claim</u>. Navarro mentioned to the Receiver that the Receivership Entities have a pending property damage insurance claim; however, Navarro has not turned over any information regarding the insurance claim.

### *Liabilities and Claims Against the Receivership Assets*

27.    From a review of the Public Records, there are 91 filed judgment lien certificates against SOS and 15 filed judgment lien certificates against MOI (including the Final Judgment). From the Receiver's review of these certificates:

a.   The principal balance of all judgments with active judgment lien certificates is $34,304,422.53.

b.   That principal balance is inclusive of the $15,537,590.23 in principal owed on the Final Judgment held by the Judgment Creditors.

c.   That principal balance is exclusive of interest accrued.

d.   That principal balance is exclusive of creditors that have not yet either (i) recorded their judgment against the Receivership Entities, or (ii) obtained a judgment against the Receivership Entities.

e.   That principal balance is likely subject to some downward adjustment to account for either satisfied claims and duplicate filings.

28.    From the list of pending actions provided by Navarro, there were approximately 140 pending cases involving the Receivership Entities at the time of the Receiver's appointment. These cases are all in various stages of litigation and to date, Navarro has not produced any files

or documents in order for the Receiver to meaningfully examine whether the Receivership Entities possess meritorious claims or defenses in connection with these actions.

29.    The Receiver was also contacted by the Department of Labor regarding inquiries in to the Receivership Entities' employment practices and claims from a decedent of a former employee whose insurance premiums were allegedly not paid by the Receivership Entities while under the management of the Control Parties.

30.    The Receiver spends a significant portion of time daily responding to creditors' questions regarding the receivership estate. The Receiver and his professionals spend even more time daily attending to pending litigation against the Receivership Entities in venues all over the State of Florida. In light of the insolvency of the Receivership Entities and in order to reduce the administrative expense associated with attending to these litigation claims, the Receiver has agreed to entry of judgments in many of these actions that protects the assets of the receivership estate from collection, cuts off any obligation for the Receiver to respond to discovery in aid of execution, and preserves the right of the Receivership Entities to contest the amounts of the judgments, if necessary. However, at least one of these putative creditors is seeking a default judgment against the Receivership Entities in excess of $20 million and to date has not agreed to the standard language the Receiver has negotiated with other creditors.

31.    In light of the administrative burden on the estate and the risk to the estate associated with these pending claims, the Receiver will be seeking relief from the Court to institute a claims a reconciliation process and/or to authorize the Receiver to file a voluntary petition for relief under title 11 of the United States Code.

Dated: May 25, 2021.

                                    Respectfully submitted,

                                    */s/ Eric J. Silver*

                                    Eric J. Silver, Esq.
                                    Florida Bar Number 057262
                                    esilver@stearnsweaver.com
                                    STEARNS WEAVER MILLER
                                     WEISSLER ALHADEFF & SITTERSON, P.A.
                                    Museum Tower, Suite 2200
                                    150 West Flagler
                                    Miami, Florida 33130
                                    Telephone: (305) 789-3200
                                    Facsimile: (305) 789-3395

11

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2020-022321-CA-01

Tempur-Pedic North America LLC et al.,

      Plaintiffs,

v.

SOS Furniture Co., Inc. et al.,

      Defendants.

_____/

## REPORT OF SALE
### *(Inventory)*

Drew M. Dillworth, court appointed receiver for SOS Furniture Co., Inc. and Mattress One, Inc. (together, the "Receivership Entities"), by and through undersigned counsel, reports the following results provided by Hilco from the sale of the Receivership Entities saleable inventory located at the Facility authorized by this Court's *Order Granting Receiver's Emerg*ency *Motion for Entry of an Order (I) Authorizing the Liquidation of the Receivership Entities' Inventory, (II) Authorizing the Receiver to Enter Into the Wholesale Inventory Disposition Agreement, (III) Authorizing the Sale of Assets Pursuant to Liquidation Sale Free and Clear of all Liens, Claims, and Encumbrances, (IV) Authorizing the Receiver's Abandonment of all Leasehold Interests and Unsold Inventory, (V) Approving the Form and Manner of Notice of the Receiver's Abandonment of all Leasehold Interests and Unsold Inventory and Assets, and (VI) Granting Related Relief* [D.E. 53]:[1]

---

[1] All other capitalized terms not defined herein shall have the meanings ascribed to them in D.E. 53.

| Gross Sale Proceeds | | | |
|---|---|---|---|
| Product | Quantity | Unit Sale Price | Total Sale Price |
| Bed in a bag | 714 | $ 7.50 | $ 5,355.00 |
| Mattress covers | 14,376 | $ 2.50 | $ 35,940.00 |
| Mattresses | 1,315 | $ 60.00 | $ 78,900.00 |
| Pillows | 2,488 | $ 2.50 | $ 6,220.00 |
| **Grand Total Sale Proceeds** | **18,893** | **$ 6.69** | **$ 126,415.00** |

| Costs | |
|---|---|
| **Hilco Commission** | **$ 25,283.00** |
| (Grand Total x 20%) | |
| **Hilco Expenses** | **$ 28,158.15** |
| Labor | $ 24,935.73 [2] |
| Forklift | $ 2,240.85 |
| Locksmith | $ 981.57 |
| **Hilco Subtotal** | **$ 53,441.15** |
| | |
| **Sale Proceeds Subtotal** | **$ 72,973.85** |
| | |
| **Landlord** | **$ 10,946.08** |
| (Subtotal x 15%) | |
| **Grand Total Costs** | **$ 64,387.23** |

| **Net Recovery to Estate** | **$ 62,027.77** |
|---|---|

Dated: May 27, 2021.

Respectfully submitted,

*/s/ Eric J. Silver*
Eric J. Silver, Esq.
Florida Bar Number 057262
esilver@stearnsweaver.com
STEARNS WEAVER MILLER
  WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

---

[2] Hilco originally submitted labor expenses of $17,374.61 to the Receiver, or $7,561.12 less than the final total; accordingly, this report amends, supersedes, and corrects the amounts reflected in ¶ 21 of the Receiver's *Status Report and Invent*ory [D.E. 66].

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

TEMPUR-PEDIC NORTH AMERICA, LLC, et al.,

    Plaintiffs,

v.

                                               Case No. 2020-022321-CA-01

SOS FURNITURE CO., INC., et al.,

    Defendants.

_____/


## RECEIVER'S MONTHLY REPORT


## Submitted by Drew M. Dillworth, Receiver


## May 27, 2021

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

TEMPUR-PEDIC NORTH AMERICA, LLC, et al.,

    Plaintiffs,

v.

                                  Case No. 2020-022321-CA-01

SOS FURNITURE CO., INC., et al.,

    Defendants.

_____/

## TABLE OF CONTENTS

**RECEIVER'S REPORT**

**EXHIBITS**

**Receipts/Disbursements for period 2/22/2021 to 4/30/2021**        **A**

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

TEMPUR-PEDIC NORTH AMERICA, LLC, et al.,

    Plaintiffs,

v.

                                         Case No. 2020-022321-CA-01

SOS FURNITURE CO., INC., et al.,

    Defendants.

_____/

## RECEIVER'S FIRST REPORT

Pursuant to the *Post Judgment Order Appointing Receiver* dated February 22, 2021 (the "Receivership Order"). Drew M. Dillworth was appointed Receiver (the "Receiver") with exclusive custody and control of the Judgment Debtors, SOS Furniture Co., Inc. ("SOS") and Mattress One Inc. ("MOI" and together, the "Receivership Entities").

In ¶ 8 of the Receivership Order, the Receiver is directed to prepare and file with the Court on the twentieth (20th) day of the month (commencing 60 days after the date of the Receivership Order), a full and complete, separate report for the Receivership Property, under oath, setting forth all receipts and disbursements, cash flow and reporting all changes in assets in the Receiver's charge or claims against the assets that have occurred during the prior period. The Receiver's First Report covers the period of time from the date of his appointment, February 22, 2021 to April 30, 2021 (the "Initial Reporting Period").

The Receiver adopts prior pleadings and reports he has filed in this case for the full context in which this report is being provided, including without limitation his Notices of Non-Compliance [D.E. 31 and 38], Declaration [D.E. 46] in support of emergency relief, and Status Report and Inventory [D.E. 66]. Although the Receiver attempted to take control of the operations of the Receivership Entities, the Control Parties (defined in D.E. 31) prevented that reality and <u>the Receiver never operated the Receivership Entities</u>.

The Receiver is still in the process of gaining control over and access to the books of records of the Receivership Entities to ascertain their true financial condition. In support of that effort, Receiver sought the cooperation of the receivership entities agents and representatives in order to enforce the terms of the Receivership Order, as well as seeking discovery from third parties. As the Court is well aware, the Receiver has also sought the assistance of the Court in gaining access to the books and records.

## I.    Receipts and Disbursements

During the Initial Reporting Period, the Receiver collected **$1,845,388.43**, consisting of (a) $173,188.43 of the Chase Settlement Funds (defined in D.E. 56), and (b) the Fifth Third Funds (defined in D.E. 56) totaling $1,672,200.00, and disbursed **$0.00**, as detailed in **Exhibit A**.[1]

---

[1] The Receiver notes that as of the filing of this report and since the conclusion of the Initial Reporting Period, the Receiver has received and additional $72,973.85 in funds from the liquidation of the receivership estate's inventory. <u>See</u> Section II, <u>infra</u>. The funds will be reflected in the next monthly operating report and the Receiver will file a report of sale.

All of the foregoing deposits were made to the Receiver's counsel's trust account and subsequently transferred to the Receiver's account for SOS. Due to timing issues, they are not reflected in the attached statements.

2

II.    **Changes in Assets in the Receiver's Charge**

The Receiver, with the approval and authorization of the Court, liquidated the Receivership Entities' saleable inventory located in the Orlando distribution center and abandoned all non-saleable inventory wherever located and all leasehold interests of the Receivership Entities.

As the Court is aware, the Receiver is investigating and has retained special litigation counsel Cimo Mazer Mark PLLC and Roniel Rodriguez IV PA, to investigate and pursue claims and causes of action against any insiders of the Receivership Entities, any pre-petition professionals of the Receivership Entities, and financial institutions. <u>See</u> D.E. 58. The Receiver, through special counsel, has not, as of yet, initiated any litigation claims.

III.    **Claims Against the Assets**

<u>Post-receivership liabilities</u>. The Receiver and his professionals have incurred fees and expenses administering the estate. Pursuant to the Receivership Order, the Receiver and his professionals are entitled to have those fees paid monthly without application to the Court. However, given the status of these case and, until recently, the lack of funds available to pay the Receiver and his professionals (see note 1 <u>supra</u>), the estate professionals have deferred their monthly compensation and will apply to the Court for compensation if and when they deem appropriate (consistent with the fee provisions of the Receivership Order).

<u>Pre-receivership liabilities</u>. Inclusive of the Judgment that led to the appointment of the Receiver, and as more particularly set forth in the Receiver's Status Report and Inventory [D.E. 66], the Receiver has identified 91 judgment lien

certificates filed against SOS and 15 judgment lien certificates against MOI; all with an aggregate principal value in excess of $34 million. The Receiver is aware of approximately 140 lawsuits pending against the Receivership Entities in venues across the State of Florida. The Receiver is aware of one creditor seeking the entry of a judgment in excess of $20 million. The Receiver is aware of another approximately $3.4 million of loans made to the Receivership Entities. There may be additional claims, but for well-documented reasons, the Receiver is unable to verify the validity, priority and extent of the Receivership Entities' pre-receivership liabilities.

*  *  *  *  *

Respectfully submitted this 27th day of May 2021.


/s/ Drew M. Dillworth
Drew M. Dillworth, Receiver
ddillworth@stearnsweaver.com
Museum Tower-Suite 2200
150 West Flagler St.
Miami, FL 33130

# EXHIBIT A

# City National Bank
## Bci FINANCIAL GROUP

### Client Service

 **Online**
citynational.com

 **CityTel**
1-800-762-CITY (2489)

 **Your Banking Center**
Commercial Banking
P.O. Box 025620
Miami, FL 33102-5620

 **Telephone**
305-577-7336
800-435-8839

 **Your Banking Center Hours**
Lobby:    Monday - Thursday :  9:00am - 4:00pm
Friday:    9:00am - 5:00pm

2154 1 AV 0.395                    P:2154 / T:8 / S:

SOS FURNITURE COMPANY INC RECEIVERSHIP
DREW M DILLWORTH
CASE # 2020-022321-CA-01
150 W FLAGLER ST STE 2200
MIAMI FL 33130-1545

For additional locations
and hours, please visit
citynational.com

 **Member FDIC**     **EQUAL HOUSING LENDER**

## Commercial Money Market Deposit

### Account Summary

| | | | |
|---|---|---|---|
| Account: | XXXXXXX9599 | Beginning Balance: | $0.00 |
| Last Statement: | April 27, 2021 | Ending Balance: | $0.00 |
| This Statement: | April 30, 2021 | Interest Earned This Period: | $0.00 |
| | | Interest Earned 2021: | $0.00 |
| | | Annual Percentage Yield Earned: | 0.00% |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 04-27 | Beginning balance | | | 0.00 |
| 04-30 | Ending totals | 0.00 | 0.00 | 0.00 |

## Tap into your home's equity with a cash-out refinance while rates are still low.

To learn more, call us at 305-448-6500 and select option 4 to speak to a representative regarding our residential loans and mortgages.



NMLS 412469

**Join us on social media!** 



## Accessing your finances just got more convenient.
You can now see account balances and view transactions at a glance – on your watch!

Introducing our free* smartwatch banking app.

Download the latest mobile banking app now from:

*Our app is free, however, standard rates and fees from your wireless carrier may apply. The Apple® logo, Apple Watch® and iPhone® are trademarks of Apple Inc., registered in the U.S. and other countries. The Android™ logo, Android Wear™ and other Google trademarks are property of Google LLC.

# City National Bank

### Bci FINANCIAL GROUP

## Client Service

 **Online**
c",citynational.com

 **CityTel**
1-800-762-CITY (2489)

**Your Banking Center**
Commercial Banking
P.O. Box 025620
Miami, FL 33102-5620

**Telephone**
305-577-7336
800-435-8839

 **Your Banking Center Hours**
Lobby:     Monday - Thursday :   9:00am - 4:00pm
              Friday:                    9:00am - 5:00pm

2153 1 AV 0.395                              P:2153 / T:8 / S:

SOS FURNITURE COMPANY INC RECEIVERSHIP
DREW M DILLWORTH
CASE # 2020-022321-CA-01
150 W FLAGLER STREET SUITE 2200
MIAMI FL 33130-1545


For additional locations
and hours, please visit
citynational.com


Member **FDIC**

EQUAL HOUSING LENDER

## Regular Commercial Checking

### Account Summary

| | | | |
|---|---|---|---|
| Account: | XXXXXXX7439 | Beginning Balance: | $0.00 |
| Last Statement: | April 19, 2021 | Ending Balance: | $0.00 |
| This Statement: | April 30, 2021 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 04-19 | Beginning balance | | | 0.00 |
| 04-30 | Ending totals | 0.00 | 0.00 | 0.00 |



## Tap into your home's equity with a cash-out refinance while rates are still low.

To learn more, call us at 305-448-6500 and select option 4 to speak to a representative regarding our residential loans and mortgages.

NMLS 412469


**Join us on social media!**

## Accessing your finances just got more convenient.
You can now see account balances and view transactions at a glance – on your watch!

Introducing our free* smartwatch banking app.

Download the latest mobile
banking app now from: 

*Our app is free, however, standard rates and fees from your wireless carrier may apply. The Apple® logo, Apple Watch® and iPhone® are trademarks of Apple Inc., registered in the U.S. and other countries. The Android™ logo, Android Wear™ and other Google trademarks are property of Google LLC.

008045